# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 1504005028 |
| | ) | |
| | ) | |
| THOMAS RIVERS, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: October 11, 2018
Decided: December 4, 2018

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED AND DEFENDANT'S MOTION FOR EVIDENTIARY HEARING SHOULD BE DENIED

Daniel B. McBride, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State of Delaware.

Thomas Rivers, *pro se*

**MAYER,** Commissioner

This 4th day of December, 2018, upon consideration of Defendant's Motion for Postconviction Relief and the record in this matter, the following is my Report and Recommendation.

## BACKGROUND, FACTS AND PROCEDURAL HISTORY

On July 12, 2016, after a jury was selected and sworn, but before trial commenced, Thomas Rivers ("Defendant") agreed to plead guilty to Attempted Murder First Degree and Possession of a Firearm During the Commission of a Felony ("PFDCF").

The charges stem from an incident that occurred on April 3, 2015, when Shurki Brown was shot seven times at close range while walking to his car. Elva Stewart ("Stewart"), the victim's aunt, was nearby at the time of the shooting. The victim survived and identified Defendant as the shooter. In addition, Dawan Harris ("Harris") was in the vicinity at the time of the shooting and provided a detailed description of what the shooter was wearing, what he looked like, and his nickname (that matched Defendant's known nickname). Harris also identified Defendant from a photographic lineup. The State intended to present evidence from surveillance cameras capturing Defendant near the scene of the shooting when it occurred and that he was wearing the exact clothing described by the witnesses.

Through the Plea Agreement, the State agreed to cap its sentencing recommendation to 23 years at Level 5. At that time, Defendant also executed a

2

Truth-in-Sentencing Guilty Plea Form and acknowledged that the statutory penalty for the Attempted Murder charge was 15 years at Level 5 to life imprisonment, with a minimum mandatory of 15 years at Level 5. The Court ordered a pre-sentence investigation and on July 21, 2017, Defendant was sentenced on the Attempted Murder charge to 25 years at Level 5, suspended after 15 years for decreasing levels of probation.[1]

On September 11, 2017, Defendant moved for a modification or reduction of his sentence. The Court issued an Order denying the motion because (a) the sentence was imposed pursuant to a plea agreement; (b) the Court addressed Defendant personally in open court and determined he understood the charge and the maximum penalty; (c) Defendant acknowledged in open court that he understood the range of possible penalties; (d) the Court has no authority to reduce or suspend the mandatory portion of any sentence; and (e) no additional information was provided to warrant a reduction or modification of sentence.[2]

On May 10, 2018, Defendant filed a Motion for Postconviction Relief.[3] The Motion presented three claims of ineffective assistance of counsel. The record was

---

[1]   Prior to the Sentencing Hearing, the State agreed to *nolle prosequi* and dismiss the PFDCF charge.

[2]   *See* D.I. # 49.

[3]   D.I. # 50.

3

enlarged, Defendant was given an opportunity to amend the Motion,[4] trial counsel submitted an Affidavit (hereinafter "Trial Counsel") responding to the allegations, and the State filed a response.[5] After having reviewed the various papers submitted to the Court, I do not believe an evidentiary hearing would further assist with resolution of this matter.

Defendant presents a singular basis for relief: that trial counsel was ineffective in advising him to accept the plea offer despite the failure to interview potential witnesses or conduct an independent investigation that would have resulted in a more favorable outcome.[6] Defendant's Memorandum of Law argues that Stewart would have testified that the person who shot her nephew didn't have a beard or tattoos (and Defendant did) and Trial Counsel's failure to advise him of this caused Defendant prejudice because he plead guilty rather than going to trial with this evidence.

---

[4] On July 5, 2018, Defendant filed an Amended Motion for Postconviction Relief [D.I. # 57]; on August 9, 2018, Defendant filed a Memorandum of Law and an Affidavit in support of his Motion [D.I. # 60]. Defendant was afforded an opportunity to file a reply to the State's Response but did not do so.

[5] Trial Counsel's Affidavit was filed on September 10, 2018 [D.I. # 61], and the State filed a Response on October 11, 2018 [D.I. # 62].

[6] *See* Amended Motion at D.I. # 57. Defendant's Motion to Amend indicates he wished to withdraw his pending ineffective assistance of counsel claims submitted by way of his previous filing and to present only the amended claim under "Ground One" of his updated Rule 61 motion.

4

In addition, Defendant argues there was a "star witness" that wrote an affidavit saying he lied to the police and he never saw Defendant shoot the victim. In support of the above claims, Defendant submitted an affidavit from Dawan Harris.[7] Mr. Harris claims he falsely identified Defendant as the shooter, and only did so because he was "drunk and high," pressured by the police and "on the run" for criminal matters.

Trial Counsel's Affidavit[8] attests that he reviewed witness statements with Defendant prior to trial, and in particular the possibility of impeaching Stewart's recorded statement/testimony. Defendant was made aware of the weaknesses in the witness's statements. Trial Counsel admits that he did not interview the victim. However, Trial Counsel states the victim was uncooperative and could not be found by the State, and since he was necessary for the State to prove its case, it was not in Defendant's best interest to assist with locating him. The victim was eventually arrested, incarcerated and agreed to cooperate with the State to identify Defendant as the shooter. With respect to the Harris affidavit provided by Defendant, Trial Counsel explains that prior to trial, he sent a private investigator to visit Harris while incarcerated. Trial Counsel discussed that interview with Defendant and

---

[7] It appears that the affidavit was signed on April 5, 2016 (three months before Defendant plead guilty), but the notary signature and seal are illegible.

[8] Although Defendant withdrew all but one claim, Trial Counsel addressed all of the allegations.

5

subpoenaed the private investigator to testify at trial in the event Harris changed his story from what was told during the interview.[9]

Trial Counsel further attests that he discussed the strengths and weaknesses of the State's case with Defendant as well as mitigating factors relevant to sentencing. Finally, Trial Counsel believes he filed all motions legally relevant to Defendant's case,[10] explained the law to him, and the ramifications of going forward with trial and/or accepting a plea.

The State argues that Defendant suffered no prejudice because as a result of the plea, the State agreed not to seek sentencing under the habitual offender statute, and if he had gone to trial and Defendant were convicted, Defendant could have been sentenced to life in prison. Defendant knew he faced the possibility of 15 years to life imprisonment, that the State would recommend 23 years at Level 5, and Defendant essentially received the minimum mandatory. The State further supports Trial Counsel's Affidavit that no further investigation could have been undertaken to improve Defendant's possible outcome at trial.

---

[9] Defendant's Memorandum of Law refers to his discussion with Trial Counsel about potential defenses for trial and states "prior to that the defendant had received a notarized affidavit from the State's star witness explaining that he lied…" Therefore, it is not disputed that Defendant was aware of the affidavit from Harris and Defendant does not appear to be making an argument that new evidence was discovered.

[10] Collectively, Defendant's counsel filed a Motion to Dismiss, Motion to Compel, Motion for Relief from Prejudicial Joinder and a Motion to Exclude Evidence.

## LEGAL ANALYSIS

Before considering the merits of the claims, the Court must first determine whether there are any procedural bars to the motion.[11] This is Defendant's first motion for postconviction relief and it was timely filed pursuant to Superior Court Criminal Rule 61.[12]

Defendant, with full knowledge of the witness statements, elected to plead guilty and forgo confronting the witnesses at trial. A defendant's statements to the Court during the guilty plea colloquy are presumed to be truthful and Defendant is bound by his statements to the Court.[13] Through the Plea Agreement and Truth-in-Sentencing Guilty Plea Form, Defendant agreed to waive the right to a trial by jury, to question witnesses, to present evidence in his defense, to testify in his defense, and to compel the State to prove each of the charges against him. The Court's decision on Defendant's sentencing motion acknowledged that the plea was knowing, intelligent and voluntary. Therefore, Defendant waived the right to contest

---

[11] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[12] *See* Super. Ct. Crim. R. 61(i)(1) (motion must be filed within one year of when conviction becomes final).

[13] *Windsor v. State*, 2015 WL 5679751, at *3 (Del., Sept. 25, 2015) (holding that absent clear and convincing evidence to the contrary, defendant is bound by his sworn statements). *See also, State v. Brown*, 2010 WL 8250799, at *3 (Del. Super., Apr. 14, 2010), citing, *Somerville v. State*, 703 A.2d 629 (Del. 1997).

the witness statements and/or State's ability to prove the charges against him when he accepted the plea.

Despite this, the Motion should also be denied because it fails to meet either prong of the *Strickland*[14] standard. Defendant's claims of ineffective assistance of counsel are premised on the basis that had Trial Counsel investigated the witness statements further, Defendant would have proceeded to trial and the outcome would have been different. In order to prevail on an ineffective assistance of counsel claim, a defendant must show that his counsel's representation fell below an objective standard of reasonableness and the deficiencies in counsel's representation caused the defendant actual prejudice.[15] When a defendant has plead guilty, he must show that counsel's actions were so prejudicial that there is a reasonable probability that, but for counsel's errors, the defendant would not have plead guilty and would have insisted on going to trial.[16] Defendant must also overcome a strong presumption that counsel's conduct was reasonably professional under the circumstances.[17] Mere

---

[14] *Strickland v. Washington*, 466 U.S. 668 (1984).

[15] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Hitchens v. State*, 757 A.2d 1278 (Del. 2000).

[16] *State v. Hess*, 2014 WL 6677714, at * 6 (Del. Super., Nov. 20, 2014) (citations omitted).

[17] *State v. Wright*, 653 A.2d 288, 293-94 (citations omitted).

8

allegations of ineffectiveness will not suffice, rather, a defendant must make and substantiate concrete allegations of actual prejudice.[18] Great weight and deference are given to tactical decisions by the trial attorney and counsel cannot be deemed ineffective for failing to pursue motions that lack merit.[19]

According to Trial Counsel's Affidavit, he provided Defendant with the witness statements. Trial Counsel did not actively seek the victim as it would not benefit Defendant for him to be found. Trial Counsel also made Defendant aware of Stewart's statement and his strategy for addressing her testimony at trial. Finally, Defendant was aware of Harris's affidavit, his retraction of his previous statements, and Trial Counsel was prepared to address the witness at trial and present a secondary witness in the event Harris attempted to change his story (again). Defendant does not provide any insight as to what, if anything, Trial Counsel should have done differently. Trial Counsel's investigation and preparation for trial appears to have been thorough and objectively reasonable under the circumstances. Defendant has failed to demonstrate error by counsel. Moreover, Defendant received a significant benefit from the plea, including dismissal of certain charges, evading an habitual offender determination, and the minimum mandatory for the one

---

[18] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

[19] *State v. Miller*, 2013 WL 871320, at *4 (Del. Super., Feb. 26, 2013).

charge that remained.  As such, I find that Defendant has not established prejudice as a result of Trial Counsel's actions, or alleged inaction.

For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be DENIED and the Motion for an Evidentiary Hearing should be DENIED.

**IT IS SO RECOMMENDED.**

Commissioner Katharine L. Mayer

oc:     Prothonotary
        Daniel B. McBride, Esquire
        Thomas Rivers, *pro se*

10